[No. 21933. *En Banc.* May 20, 1929.]

THE STATE OF WASHINGTON, *on the Relation of W. B. Satterthwaite, Plaintiff*, v. J. GRANT HINKLE, *as Secretary of State, Respondent*.[1]

*James G. Mulroy* and *Austin E. Griffiths*, for relator.

*The Attorney General* and *E. W. Anderson, Assistant*, for respondent.

TOLMAN, J.—The relator, by his petition filed in this court, shows that he is a duly qualified, legal voter of the state of Washington, and that he desires, by petition, to submit to the voters of this state as a referendum measure, in accordance with the provisions of our state constitution, chapter 115 of the Laws of 1929, p. 247, being House Bill No. 140; and that, accordingly, he, within ninety days after the final passage of the act referred to, by the legislature, to wit, on April 27, 1929, offered for filing in the office of the respondent five typewritten copies of the measure on which a referendum is desired, together with an affidavit set-

[1]Reported in 277 Pac. 837.

ting forth the necessary facts, and requested and demanded of the respondent that he receive such offer, file the same with a serial number and forthwith transmit to the attorney general a copy of such measure bearing its serial number for such action by the attorney general as the law prescribes.

It is alleged that the respondent, who is the duly elected, qualified and acting secretary of state for the state of Washington, wholly refused to comply with said demand in any particular whatsoever, and still continues such refusal.

Upon the filing of the petition in this court, an alternative writ of mandamus duly issued, and respondent, not having complied with the petitioner's demand, has appeared and demurred to the petition.

The question thus presented to the court is whether or not chapter 115 of the Laws of 1929, p. 247, is subject to referendum under the seventh amendment to the constitution, Art. II, § 1.

"(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted."

The act in question is entitled:

"An Act relating to, and to promote efficiency, order and economy in, the administration of the government of the state, prescribing the powers and duties of certain officers and departments, creating the department of highways and the office of director of highways, and amending sections 2, 3, 4 and 7 of chapter 7 of the Laws of 1921, and declaring that this act shall take effect immediately" (Laws of 1929, p. 247),

and in substance it abolished the state highway committee, as it theretofore was constituted and existed, and substituted therefor a director of highways in charge of a department of highways on an equality with the other departments of the state government provided for by chapter 7 of the Laws of 1921, p. 12 [Rem. Comp. Stat., § 10759].

The question thus presented has been twice before this court: First, in the case of *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11, where the subject was exhaustively discussed and the views of majority and minority were set forth *in extenso;* the holding there being that the referendum cannot be withheld by the legislature in any case except where the act touches the immediate preservation of the public peace, health or safety, or is for the financial support of the government and the public institutions of the state; that if the question be doubtful, it will be treated as a legislative question and the doubt resolved in favor of the declaration of emergency made by the legislative body; that emergency does not mean expediency, convenience or best interest; and in that case an act, in effect precisely the same as the one now before us, which took from one board or set of officers certain duties and placed them upon another board or set of officers, was held not to be exempt from the constitutional provision which we have quoted by the simple expedient of a legislative declaration of an emergency. In that case, a substantial minority of the court, dissenting, rested their position upon a lack of power in the courts to review the legislative declaration of an emergency.

In *State ex rel. Short v. Hinkle,* 116 Wash. 1, 198 Pac. 535, however, where the question was again presented, no such principle as that upon which the dissent in the *Brislawn* case was rested was publicly as-

serted by any member of this court, and the majority
very clearly recognized the correctness of the holding
to the contrary in the *Brislawn* case, and specifically
distinguish thè *Short* case from the *Brislawn* case by
reason of the facts or purported facts stated in the
emergency clause of the act, and in the act proper.

Contrary to the case there, the language of the em-
ergency clause in the act involved in this case follows
exactly the language of the emergency clause in the
act under consideration in the *Brislawn* case.

The emergency clause considered in the *Short* case
reads as follows:

"Whereas the revenues of the state are insufficient
to support the state government and its existing public
institutions as at present organized, and whereas it is
necessary that the existing administrative agencies of
the state government be consolidated and coordinated
in order to bring the cost of supporting the state gov-
ernment and its existing institutions within the pos-
sible revenues of the state, therefore this act is neces-
sary for the support of the state government and its
existing public institutions, and shall take effect im-
mediately." Laws of 1921, p. 69, § 138.

In the *Short* case, the court said, with reference to
the purposes of the act there involved:

"The act says that the revenues are insufficient to
support the state government in its then existing form,
and that in order for the state, as an institution, to
continue to function its expenditures must be so re-
duced as to fall within the possible revenue, and to
effect this purpose the act abolishes many offices,
boards and commissioners, provides against the dupli-
cation of duties and responsibilities in administration,
coordinates the operation of the business of the state,
classifies employees, provides for expenditures in cases
of emergency, authorizes the exchange between state
institutions of supplies, provides a cost accounting
system, sustains building programs, and authorizes the
preparation of estimates for appropriations,"

and, with reference to the situation thus shown, the court said:

"The legislature possessed the opportunity (and is conclusively presumed to have availed itself of that opportunity) to know the facts and has declared that a precarious financial condition prevails. We are asked to say that the solemn statement of the legislature is false, and to say so, not because we are possessed of any knowledge upon the subject, but because we are ignorant upon it. We can take no testimony; we have no machinery with which to gather the facts, which the legislature is presumed to be possessed of, but, totally in the dark, we are asked to substitute our personal prejudices, predilections and preconceptions for the presumably enlightened judgment of those deputed by the constitution of the state to inquire into and determine these factual problems. It is only when the court, following the *Brislawn* case, can say, from its judicial knowledge, that a patent contradiction exists upon the face of a legislative enactment, that, in law or in reason, it can deny the legislative declaration of emergency."

Since the act now before us presents no such situation, it is unnecessary to further discuss the *Short* case. It is, we believe, impossible to distinguish this case in its facts from the *Brislawn* case in any controlling particular.

Since the subject has already been discussed in all its aspects, and there is nothing to be gained by repeating the arguments heretofore indulged in, or by attempting to elaborate thereon, we are content to hold that the *Brislawn* case is here absolutely controlling, and therefore the act is subject to referendum.

On account of the shortness of the time, the writ will issue forthwith as prayed for.

MAIN, BEALS, HOLCOMB, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—While I am unable to concur in the conclusion reached by the majority, I do

226

not feel that I need state here the reasons for my dissent. The questions involved in the application of the relator have been before this court in instances other than those noted in the majority opinion, and in one of these (*State ex rel. Blakeslee v. Clausen*, 85 Wash. 260, 148 Pac. 28, Ann. Cas. 1916B 810) I took occasion to state the reasons why I thought the court in error. I need but add that I adhere to the views I there expressed.

FRENCH and MILLARD, JJ., concur with FULLERTON, J.