[No. 23112.   *En Banc.*   April 4, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Bernard Reiter, Plaintiff,* v. J. GRANT HINKLE, *as Secretary of State, Respondent.*[1]

*McMicken, Ramsey, Rupp & Schweppe,* for relator.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

[1]Reported in 297 Pac. 1071.

BEALS, J.—Relator, a resident of King county and a qualified voter therein, desiring to procure, by petition, in accordance with the provisions of amendment No. VII to the state constitution and the statutes passed pursuant thereto, a referendum on chapter 23 of Laws of 1931, p. 77, entitled:

"AN ACT relating to revenue and taxation, requiring distributors as therein defined to pay an excise tax on the sale of all butter substitutes, providing for licensing dealers therein, fixing a penalty for a violation of the provisions of the act, and declaring that this act shall take effect immediately,"

approved by the governor March 9, 1931, offered to the respondent, as secretary of state, for filing in his office, five typewritten copies of the act, together with relator's affidavit and other documents as required by law, demanding of respondent that he accept and file the papers, assign the bill a serial number, and transmit to the *Attorney General* a copy of the act for such action by the *Attorney General* as is prescribed by the statute.

Laws of 1931, p. 81, § 15, chapter 23, reads as follows:

"Whereas the revenues of the state are insufficient to support the state government and its existing public institutions as at present organized and this act will furnish additional and necessary revenues now required by this state, and will aid in the immediate preservation of the public peace, health and safety, therefore this act is necessary for the immediate preservation of the public peace, health and safety, support of the state government and its existing public institutions and shall take effect immediately."

Respondent, relying upon this section of the act, denied relator's request, and refused to accept or file in his office the documents tendered by relator, who thereupon instituted this action in this court by way

of an original application for writ of mandamus directed to respondent, requiring him to accept and file the copies of the act tendered by relator, and proceed to follow the procedure outlined by statute. An alternative writ of mandamus having been issued, the *Attorney General* appeared on behalf of respondent, prior to the return day fixed in the alternative writ, and demurred to the application for the writ and the affidavit filed in support thereof, upon the ground that no facts were stated sufficient to constitute a cause of action, or to entitle relator to relief by way of mandamus, or otherwise.

The question here presented is whether or not the act of the legislature above referred to, containing, as it does, an emergency clause, as set forth in § 15 of the act, *supra,* is subject to popular referendum, as is the case unless the emergency clause is in law valid and effective, and the act for that reason may not be referred to the people for ratification or rejection.

Relator argues, first, that the emergency clause will not prevent a referendum, because the act in question is not, on its face, an appropriation act; second, in the light of facts which the court will judicially notice, the emergency clause is a mere pretense and dissimulation; and, third, the act relates to a new activity on the part of the state not heretofore engaged in by the state and is, therefore, subject to referendum.

In the first place, we are of the opinion that, while it might be argued that the funds raised under the act by way of taxes upon the products therein referred to might be necessary for the immediate preservation of the public peace, health and safety, we prefer to disregard that portion of the emergency clause, and, as was said in the case of *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 Pac. 28, Ann. Cas. 1916B 810;

"Our judgment may be put upon surer ground. The real controversy revolves around the words 'support' and 'public institutions'."

Whether or not an act of the legislature levying a tax might be held emergent, as a police power act, necessary for the immediate preservation of the public peace, health and safety, need not be here determined.

The first case decided by this court in which questions similar to those here at issue were presented is that of *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11. That was an original application to this court for a writ of *quo warranto* to determine the right of certain persons to function as members of the board of state land commissioners. By Laws of 1915, ch. 6, p. 19, the legislature amended the prior law establishing the board, by enacting a statute to the effect that the commissioner of public lands, the secretary of state and the state treasurer should thereafter constitute the board of state land commissioners. The act carried an emergency clause as follows:

"This act is necessary for the immediate preservation of the public peace and safety and the support of the state government, and shall take effect immediately."

The emergency clause was vetoed by the governor, but was passed by the legislature by the constitutional majority over the veto. The new board organized, whereupon certain persons, who, under the prior law, were *ex officio* members of the board, brought the proceeding in *quo warranto* which we are now discussing, praying that the right of respondents to act as members of the board of state land commissioners be inquired into, and that they be ousted and enjoined from further intruding themselves in the office mentioned. This court, in considering the questions to be decided, said:

"There is but one question to be decided. Whether the legislature can declare an emergency in the instant case so as to free the act of the restraints contained in the recent amendment to the constitution known as the initiative and referendum amendment."

The majority of the court held that, notwithstanding the recognized "judicial aversion to a review of legislative discretion, in so far as it relates to emergency clauses," the court should determine as a judicial question whether or not the emergency clause, as contained in the bill, in view of the seventh amendment to the state constitution, should in law be held to defeat the right of the people to require a referendum on the statute. The court analyzed the law exhaustively, stating that

"Emergency, in the sense of the present constitution, does not mean expediency, convenience or best interest. There is no room for construction or speculation. The declaration is equivalent to saying that the referendum shall not be cut off in any case except in certain enumerated instances, none of which now occur."

It was held that the act was neither in fact nor in law emergent, and that the section thereof purporting to declare an emergency was void. In the course of the opinion, the court says:

"The true rule is: the referendum cannot be withheld by the legislature in any case except it be where the act touches the immediate preservation of the public peace, health, or safety, or the act is for the financial support of the government and the public institutions of the state, that is, appropriation bills. If the act be doubtful, the question of emergency will be treated as a legislative question, and the doubt resolved in favor of the declaration of emergency made by the legislative body."

The seventh amendment (Art. 2, § 1) to the constitution of this state was adopted by vote of the people at

the November election, 1912. By it, for the first time, there was introduced into our state government the modern form of the practical application of the principle of direct legislation by the people, a substantial modification of the legislative machinery of the state as established by the constitution as originally adopted. Section (b) of this amendment reads as follows:

"(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted. Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition."

Under the foregoing paragraph of amendment VII, those legislative enactments which can by the legislature be withheld from the referendum, as stated by this court in the *Brislawn* case, fall, generally speaking, into two classes: First, police power acts, whose purpose is the immediate preservation of the public peace, health or safety; and second, those which have for their object the support of the state government and its existing public institutions.

Relator contends that this court, by the use of the words "that is, appropriation bills," in the opinion in the *Brislawn* case, referring to the second class of legislation just referred to, as hereinabove quoted, held that this class of legislation was limited to appropriation bills. We cannot so hold. Statutes levying taxes are laws for the "support of the state government and its existing public institutions" to the same

or even a greater extent than are appropriation bills. Tax laws provide the funds from which the moneys appropriated are drawn. It is evident that the words "that is, appropriation bills," relied on by relator, were used by way of illustration and were not intended to be exclusive.

In the later case of *State ex rel. Blakeslee v. Clausen, supra,* this court granted an application for a writ of mandamus requiring the state auditor to issue warrants in payment of claims on account of material furnished state departments. In granting the writ it was held that a section of an appropriation bill appropriating money for the improvement of state highways, which section contained an emergency clause, was valid, and that the same did not violate the seventh amendment to our constitution. After quoting from the *Brislawn* case the paragraph thereof above quoted, referring to the "true rule," the opinion continues:

"The intent and purpose of the people, as gathered from the words of the constitution and the circumstances attending the adoption of the seventh amendment, impels the holding that the people intended to use the word 'support' in its fullest sense. When so considered, 'support' includes appropriations for current expenses, maintenance, upkeep, continuation of existing functions, as well as appropriations for such new buildings and conveniences as may be necessary to meet the needs and requirements of the state in relation to its existing institutions.

"In Webster's New International Dictionary, the word 'support' is given the following definitions: 'To furnish with funds or means for maintenance; to maintain; to provide for. To enable to continue; to carry on.'

"In the absence of an express reservation, it would be a usurpation on the part of any court to say that an appropriation directed to the maintenance of the existing activities of the state is subject to the refer-

endum. The first right of government is the right of self-preservation, and to say that the people intended, in the absence of an express reservation, to allow the government or its institutions to be crippled or embarassed in any way would be to say that the people intended that the government could not sustain itself through the mediumship of the ordinary and recognized methods of legislation."

It is important to note that in the case last cited the bill under discussion was an appropriation bill. The illustration used in the *Brislawn* case was apposite, and no reason existed for further illustration, or for consideration of any other possible or proper application of the doctrine therein laid down. Certainly, the language of the court last above quoted is as applicable to a bill levying a tax as to one appropriating money. If the operation of such legislation could be delayed by a referendum, an even worse situation might result than that to which the court calls attention in the *Blakeslee* case.

In the opinion last cited, it is stated that

"It does not follow that a referendum may not be had of a law, or any part of a law, carrying an appropriation. If a law were passed bringing the state into a new activity, or providing for a new function so that it might be fairly said that it did not pertain to the support of the government as then organized or to any existing institution, as for instance, a law like the one creating the industrial insurance commission, the law creating a railroad commission, or a law establishing an entirely new institution, the rejection of the law would cause a lapsation of the appropriation."

Relator argues that because the act here in question levies a tax upon products not heretofore so burdened, the language just quoted is applicable. We cannot so hold; money raised under the law now under consideration goes into the general fund of the state,

and the fact that the tax is a new one does not bring the law within the doctrine referred to.

In the case of *State ex rel. Anderson v. Howell,* 106 Wash. 542, 181 Pac. 37, an application for a writ of mandamus directed to the secretary of state, requiring him to accept and file documents offered by the relator for the purpose of subjecting § 1, chapter 46, Laws of 1919, p. 90, to referendum, was denied. The act referred to, commonly known as the ''motor vehicle code,'' contained an emergency clause, and was enacted for the purpose of regulating the operation of automobiles over the state highways, and for the purpose of raising revenue for the maintenance and repair of state roads.

The relator contended that the act was, in fact, not emergent, and that it should be held as matter of law that the emergency clause therein contained was void. The court held, contrary to relator's contention, that the act was a revenue measure, and that the law, providing as it did revenue by which the public highways should be built and maintained, plainly related to the support of state institutions. Continuing, the court said:

''Chapter 46 of the Laws of 1919, p. 90, is an act for the support of the highways of the state. It regulates the use of such highways. It authorizes certain motor vehicles to be operated upon the highways upon the payment of certain license fees. These license fees are to go into a fund known as the 'Motor Vehicle Fund.' The fund is to be distributed in a certain way to be paid out by appropriations. The same legislature, by an act known as ch. 92 (p. 223), appropriated money to be raised from these license fees. Chapter 46 is to be construed *in pari materia* with other chapters appropriating moneys from these funds. In fact, chapter 46, amending the act of 1915, is in effect a revenue measure. It provides the revenue by which the public highways in the state are to be built and main-

tained. It is, therefore, plainly an act relating to the support of the state institutions. We can readily understand why there was an emergency for this chapter. Under the provisions of the act of 1915, as amended by the Laws of 1917, collections from motor vehicle license fees began on March the 1st and were to be paid into the secretary of state's office prior to June the 1st. If chapter 46, now under consideration, did not take effect until ninety days after the adjournment of the legislature, it would not take effect until after June the 1st, so that the increased license fees from motor vehicles operating upon the highways of the state could not be collected under the act until the year 1920. Large appropriations for maintenance and construction of highways were made out of the fees to be collected from motor vehicles. It was necessary, therefore, in order that these appropriations might become available to support the public highways, that this act should take effect immediately. But even if this were a doubtful question, then, under the rule in *State ex rel. Blakeslee v. Clausen, supra,* the legislative declaration would control. We think the question is not doubtful and that the legislature was justified in making the act emergent. Being an emergent act, it is not subject to referendum under the constitution.''

This case is directly in point here, and, unless we depart from the rule therein laid down, the application of the relator herein must be denied.

In the case of *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162, a proceeding similar to this, an application for a writ of mandamus, directed to the secretary of state, was denied, the court holding that the emergency clause attacked by the relator was valid, and the act, which related to cities of the first class and prohibited diversion of certain revenues of such municipal corporations, was not subject to referendum. In the course of its opinion, the court said:

''The framers of the seventh amendment to our state constitution, and the people by its adoption, have, therefore, selected and excepted from the operation 'of

the referendum, only laws invoking those certain, definite and unquestioned phases of the police power which, in their very nature, may be and usually are emergent—in general terms 'such laws as may be necessary for the immediate preservation of the public peace, health or safety,' and specifically such measures as are essential to the preservation of these things, in that government is so essential; namely, laws necessary for 'support of the state government and its existing public institutions.' While this last phase of the exception may include some revenue laws and some appropriation laws, that is not the line of cleavage. The clear intention was to include within the exception any and all laws, and only such, as may be necessary for such support.''

In the later case of *State ex rel. Short v. Hinkle,* 116 Wash. 1, 198 Pac. 535, another proceeding similar to the case at bar, the prior decisions of this court in connection with similar proceedings were discussed and analyzed, and a majority of the court, referring to the emergency clause then under attack, said:

''This is a declaration of fact and unless the court from its judicial knowledge can say this fact does not exist it must be taken as true.''

The emergency clause then under consideration, being the last section of chapter 7, Laws of 1921, p. 69 (quoted in the opinion last cited), reads as follows:

''Whereas the revenues of the state are insufficient to support the state government and its existing public institutions as at present organized, and whereas it is necessary that the existing administrative agencies of the state government be consolidated and coordinated in order to bring the cost of supporting the state government and its existing institutions within the possible revenues of the state, therefore this act is necessary for the support of the state government and its existing public institutions, and shall take effect immediately.''

This case is also in point here, and strongly supports respondent's contention.

The last opinion of this court upon a question similar to that here presented is that in the case of *State ex rel. Satterthwaite v. Hinkle,* 152 Wash. 221, 277 Pac. 837, in which an application for a writ of mandamus compelling the secretary of state to receive and file a petition calling for a referendum on chapter 115, Laws of 1929, was granted. This decision was based directly upon the *Brislawn* case, which it was held was controlling.

The case at bar, on the other hand, is controlled by the decisions of this court in the cases of *State ex rel. Anderson v. Howell,* and *State ex rel. Short v. Hinkle, supra.*

The legislature, in the act now under consideration, as in the act which was before this court in the case of *State ex rel. Short v. Hinkle, supra,* based its declaration of emergency upon a recital of facts (hereinabove quoted), which declaration relator contends we should disregard as "a mere pretense and dissimulation." Without basing our conclusion solely upon the language of the section of the act here under attack containing the emergency clause, we hold that the act is a revenue measure, and is therefore for the financial support of the government and the public institutions of the state, within the rule laid down in the *Brislawn* case.

No facts of which we will take judicial notice are called to our attention which justify a holding that the emergency clause is a mere pretense, for which reason we should brush aside the solemn legislative declaration. Whether or not the act will produce a substantial revenue, or result in the discontinuance of the sale of the food stuffs subject thereto, cannot now be determined.

664

Relator cites authorities from other jurisdictions which are interesting and instructive, but we find ample authority for our conclusion in our own decisions.

We hold that the section of the act here attacked is valid, and relator's application for a writ of mandamus is denied.

TOLMAN, C. J., MAIN, PARKER, MILLARD, BEELER, and MITCHELL, JJ., concur.

FULLERTON and HOLCOMB, JJ., concur in the result.