[No. 29019. *En Banc.* March 17, 1943.]

THE STATE OF WASHINGTON, *on the Relation of Kinsey M. Robinson et al., Plaintiff,* v. BELLE REEVES, *as Secretary . of State, Respondent.*[1]

[1]Reported in 135 P. (2d) 75.

*Paine, Lowe, Davis & Russell, H. E. T. Herman, Holman, Sprague & Allen, McMicken, Rupp & Schweppe (Laing, Gray & Smith,* of counsel), for relators.

*The Attorney General, Fred E. Lewis, R. Max Etter,* and *Simon Wampold, Jr., Assistants,* for respondent.

*Houghton, Cluck & Coughlin, Edward E. Henry, Mervyn F. Bell, George F. Yantis, E. K. Murray, Don Abel, E. E. Boner, David Rhea, Underwood & Campbell, Clarence J. Coleman,* and *Brown & Millhouse, amici curiae.*

BLAKE, J.—The relators comprise a committee whose purpose it is to invoke a referendum on initiative measure No. 12 to the legislature (Laws of 1943, chapter 15, p. 20), entitled:

"AN ACT pertaining to public power resources and public utilities and acquisition and operation thereof by certain public authorities and municipal corporations; authorizing public utility district commissioners to create joint commissions; relating to composition,

government, powers, funds, business and properties thereof; applying certain public utility district laws thereto; empowering them to acquire electrical properties solely by issuing revenue bonds and warrants; requiring deposit of funds with State Treasurer and audit of accounts by State Auditor; taxing their operations instead of property; permitting their union; offsetting earnings against interest on certain condemnation awards; declaring emergency and that act take effect immediately."

To that end, they filed a petition with the secretary of state, complying in all respects with the provisions of Rem. Rev. Stat., §§ 5400, 5403 [P. C. §§ 2753, 2756]. The secretary of state declined to accept the petition on the ground that the act took effect immediately upon its passage by reason of the fact that it contained a declaration of emergency.

The relators here seek a writ of mandamus to compel the secretary of state to accept and file the petition to the end that the act be referred to the people at the general election to be held in November, 1944. An alternative writ was issued, and the cause is now before us on demurrer to the affidavit in support of the petition.

The petition is in double aspect. The relators ask initially that the act be declared a nullity. They contend that the act is rendered abortive because the secretary of state did not, as required by the terms of § 1 (a) of the seventh amendment to the constitution, "transmit the same to the legislature as soon as it" convened and organized. We think it unnecessary to discuss or even state the grounds for this contention, for, obviously, it is an attack upon the constitutionality of the act, which we will not consider upon an application of this character.

In its other aspect, the petition presents the question as to whether the act (notwithstanding it carries

a declaration of emergency) is subject to referendum under § 1 (b) of the seventh amendment, which, so far as pertinent to our discussion, provides:

"The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, *except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions,* . . ." (Italics ours.)

Section 15 of the act provides:

"*The purposes to be accomplished by the creation of any such joint commission or authority are declared to be essential, public and governmental purposes.* This act is necessary for the preservation of the public peace, health, and safety, *the promotion of the public welfare* and support of the state government and its existing public institutions, and shall take effect immediately." (Italics ours.)

In this quotation we have used italics to dissociate surplusage from the vital portion of the declaration of emergency; in other words, the italicized sentence and phrase cannot enlarge the categories of acts excepted from the referendum by the terms of the constitutional provision.

So, as it finally resolves itself, the question is whether this act is necessary for the *immediate* preservation of the public peace, health, and safety, and support of the state government and its *existing* public institutions.

In approaching this question, we must, of course, give great weight to the legislative declaration of emergency. Acts excepted from the referendum fall into two categories: (1) those in exercise of the police power; and (2) those providing for the financial support of the state and its *existing* institutions. If, upon any fair inference, this act may be said to

fall in either category, it is not, by reason of the declaration of emergency, subject to the referendum; otherwise, it is.

In its decisions, this court has very consistently and clearly (except in one instance) marked the cleavage between acts which are and those which are not subject to the referendum. It has upheld legislative declarations of emergency where the acts could, by reasonable inference, be said to be an exercise of the police power or in financial support of the state government or its existing institutions: *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 Pac. 28, relating to the construction of highways; *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162, relating to the financing of local improvement districts (which, of course, include sewer districts); *State ex rel. Case v. Howell,* 85 Wash. 294, 147 Pac. 1159, relating to the regulation of common carriers on the streets and highways; *State ex rel. Anderson v. Howell,* 106 Wash. 542, 181 Pac. 37, motor vehicle code; *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1, relating to the issuance of state obligations in order to alleviate conditions of want and distress caused by widespread unemployment; and *State ex rel. Reiter v. Hinkle,* 161 Wash. 652, 297 Pac. 1071, relating to excise taxes on butter substitutes. Obviously, the acts under consideration in these cases were in exercise of the police power or in support of the state government and its existing institutions. In some instances, they fall in both categories; consequently, it was held they were not subject to referendum.

On the other hand, where acts could not, by any fair inference, be said to be in exercise of the police power nor in support of the state government and its existing public institutions, the court has held legislative declarations of emergency abortive. *State ex*

*rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11, relating to a change of the personnel of the board of state land commissioners; *State ex rel. Mullen v. Howell,* 107 Wash. 167, 181 Pac. 920, relating to the prohibition amendment; *State ex rel. Satterthwaite v. Hinkle,* 152 Wash. 221, 277 Pac. 837, relating to the substitution of a director of highways for the department of highways; and *State ex rel. Burt v. Hutchinson,* 173 Wash. 72, 21 P. (2d) 514, relating to horse racing and betting by the parimutuel system. The acts under consideration in this group of cases, falling in neither category, were held subject to the referendum.

The exception in the course of the court's decisions heretofore noted is found in the case of *State ex rel. Short v. Hinkle,* 116 Wash. 1, 198 Pac. 535. That case involved the administrative code. Notwithstanding that what was effected by that code was only a change in the state administrative agencies, the court upheld a legislative declaration of emergency. The decision is not in harmony with the principles upon which all the other cases we have referred to were decided and is in direct conflict with the decisions in *State ex rel. Brislawn v. Meath, supra,* and *State ex rel. Satterthwaite v. Hinkle, supra.* It should therefore be overruled.

Now, in the light of these decisions and the principles upon which they rest, can it be said that the act under consideration falls within one of the categories of acts excepted from the referendum?

In approaching the question, it is of more than passing interest to note two features of the declaraation of emergency. One concerns an omission; the other, an interpolation. Reverting to the constitutional provision, it is to be remembered that only "such laws as may be necessary for the *immediate*

preservation of the public peace, health, or safety, support of the state government and its existing public institutions" are not subject to referendum.

In the declaration of emergency, the word "immediate" is omitted and the phrase "[for] . . . the promotion of the public welfare" is interpolated after the word "safety." Of course, the word "immediate" may have been omitted inadvertently. Its omission has significance only when considered in connection with the interpolated phrase and the general purpose of the act. The act contemplates a long-range program for the acquisition of existing electric utility properties now owned and operated by private corporations. To that end, § 2 provides "two or more public utility districts *may* create a joint public utility district commission," and "such joint commission shall be a public authority and a body politic and municipal." (Italics ours.)

The act is *permissive* in character, *not mandatory*. When, if ever, it shall come into practical operation, is left to the choice of the existing public utility districts, not upon public necessity.

It may well be argued that, if and when invoked, the act will subserve to promote the "public welfare." But, inherently, its practical effectiveness depends upon expediency—with which we are not concerned. As Judge Chadwick said in *State ex rel. Mullen v. Howell, supra,* p. 176:

"It is no argument to say that a referendum in that event would operate to promote a good cause, while this demand comes from those who would defeat all liquor legislation. We are here to declare the law, not to maintain or defend policies, and it is enough to say that the relator is within the law as declared by the whole people and, as such, his right should not in conscience be denied. We cannot fit a rule to meet a particular case; it must apply to all alike,

whatever the cause and whatever the character of those who invoke it."

"Promotion of the public welfare" is not a criterion by which we may be guided in determining whether or not an emergency exists which defeats the right to refer the act to the people—this, very simply, because it is not a criterion set up in § 1 (b) of the seventh amendment.

Judging the act by the criteria set up in that amendment, we have no hesitancy in saying that the act is *not* necessary to the preservation of the public peace nor of the public health nor of the public safety. It is not an exercise of police power. Nor, by any fair inference, can it be said to be in support of the state government and its *existing* public institutions. The revenues provided for by the act are not for the support of any *existing* public institution, but for the support of public institutions which *may* be created pursuant to the terms of the act. The act is not one which is excepted from the referendum under the terms of § 1 (b) of the seventh amendment.

To uphold a legislative declaration of emergency such as this would destroy the referendum and would permit the legislature, or a group of electors barely sufficient to invoke an initiative, to impose its will upon the majority in any instance where it is seen fit to attach to an act a declaration of emergency.

The writ will be made peremptory.

ALL CONCUR.