[No. 62663-4. En Banc. February 29, 1996.]

PHILADELPHIA II, ET AL., *Appellants*, v. CHRISTINE O. GREGOIRE, *Respondent*.

*Mike Gravel,* pro se; *Robert D. Adkins,* pro se; and *Michael J. Underwood,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Jeffrey T. Even* and *James K. Pharris, Assistants,* for respondent.

PEKELIS, J.P.T.* — Petitioners appeal a decision of a superior court dismissing their petition to obtain a ballot title from the Attorney General for Initiative 641. The superior court dismissed the petition because it determined that the initiative did not fall within the scope of the legislative authority of the state. Although we conclude that the Attorney General should have prepared the ballot title, we also hold that the initiative goes beyond the scope of power reserved to the people in our state constitution and thus should not appear on the ballot. We therefore affirm the superior court.

Petitioner Philadelphia II is a nonprofit corporation set up in order to put Initiative 641, also named Philadelphia II, on the ballot in Washington State. Petitioners also include Robert Adkins, a Washington State voter, and Mike Gravel, principal architect of the Philadelphia II initiative.

---

*Justice Rosselle Pekelis is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).

The Philadelphia II initiative seeks to establish in the United States "direct democracy" by means of a federal, nationwide initiative process to complement the current congressional system, and ultimately to call a world meeting where representatives from participating countries will discuss global issues. The sponsors of Philadelphia II believe that if 51 percent of the nation's eligible voters choose to adopt Philadelphia II, it will automatically become federal law. The sponsors hope to achieve this goal by placing the Philadelphia II measure before voters in individual states, thereby gaining the necessary 51 percent of votes if successful.

The initiative has 12 sections. The substantive sections declare that direct democracy is "hereby initiated . . . through a national state-by-state initiative process whereby this act is enacted as state law by the approval of state voters." Washington State Initiative 641, Clerk's Papers at 12. Philadelphia II also creates the United States Electoral Administration (USEA) to facilitate this process. Among the USEA's functions are to place the Philadelphia II initiative on other state ballots or conduct its own elections if no means exist to place an initiative on a state's ballot, to create a legislative drafting service to assist citizens in the preparation of their initiatives, to defend the right of direct democracy against legal challenges, and to develop a voter registration system. The initiative also appropriates state money as a loan to the USEA, to be repaid from federal funds when Philadelphia II becomes federal law. The USEA is subject to Washington state law and federal law where applicable.

Philadelphia II sets forth new procedures and regulations for initiatives on local, state, and national levels, subject to compliance with a state's constitution. It also mandates that the USEA provide, at public expense, information about citizen initiatives and sets regulations regarding fundraising and disclosure by sponsors and opponents of initiatives.

Other sections of the initiative deal with the world meet-

ing, to be held when a "critical mass" of one billion people worldwide have expressed their willingness through democratic initiative or referendum to hold the meeting. Philadelphia II sets forth methods to determine the time and place of the meeting, as well as complicated procedures to determine the number of each nation's delegates. Any declarations ensuing from the meeting will not be binding on the participating nations.

The remaining sections are primarily procedural, providing that all governmental jurisdictions shall cooperate to the greatest extent possible and that in the event a section is deemed unconstitutional, the other sections remain in force. If Philadelphia II has not become law within 10 years of its passage in Washington, it shall be null and void. If, on the other hand, it becomes federal law, it shall be deleted from the state codes and added to the federal code.

Petitioners filed the initiative with the Secretary of State pursuant to RCW 29.79.010. The Secretary of State then transmitted the proposed initiative to the Office of the Attorney General for preparation of a ballot title and explanatory statement. However, the Attorney General refused to prepare the title or statement, explaining in a letter to the Secretary of State that "the contents of the measure are beyond the legislative power reserved to the people under the Washington State Constitution." Letter of 1/26/95 from Pharris to Secretary of State, Clerk's Papers at 9. Specifically, the Attorney General determined that much of the initiative was a declaration of philosophy and thus not legislation, that the USEA would not be a state agency, and that, in general, the initiative sought to exercise legislative power outside the borders of Washington State.

Petitioners filed suit against the Attorney General in superior court, seeking, inter alia, a writ of mandamus ordering the Attorney General to prepare a ballot title and explanation. The superior court dismissed the action, holding that the initiative was not within the scope of the

legislative authority of Washington State. We granted review of the order.

■ As a preliminary matter, we address whether the appeal is moot. Although neither party has raised the issue, the initial relief requested by Petitioners can no longer be granted since the time for filing for the November 1995 election has already passed. However, we may decide to review a case, even though moot, if it involves a matter of "substantial public interest." *Westerman v. Cary*, 125 Wn.2d 277, 286, 885 P.2d 827, 892 P.2d 1067 (1994) (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). This analysis comprises three factors: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." *Id.* (quoting *Hart v. Department of Social & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)). In addition, we consider the likelihood that the issue will never be decided by a court due to the short-lived nature of the case. *Id.* at 286-87.

We determine that this case involves an issue of "substantial public interest" and reach the merits. Each of the three factors weighs in favor of review. The issue is of a public nature, it would be desirable to provide guidance to the Attorney General for future actions, and the issue is likely to recur. Not only are these factors present, but review will also avoid a situation in which the Attorney General could prevent initiatives from ever appearing on the ballot simply by refusing to prepare the ballot title, knowing that the case would be moot by the time it was reviewed by this court. We find these reasons adequate to justify review of the substantive issues.

Turning to an analysis of the merits of the case, we first consider whether the Attorney General had the authority to refuse to prepare a ballot title and summary for the Philadelphia II initiative.

■ Although we have not previously addressed the precise issue before us, statutory language and analogous

case law compel the conclusion that the Attorney General does not have discretion to refuse to prepare a ballot title due to the initiative being beyond the scope of Washington's legislative power.

The duties of the Attorney General regarding initiative ballot titles and summaries are set forth in RCW 29.79.040:

> Within seven calendar days after the receipt of an initiative or referendum measure the attorney general *shall* formulate and transmit to the secretary of state the concise statement [posed as a question and not to exceed twenty words], bearing the serial number of the measure and a summary of the measure, not to exceed seventy-five words, to follow the statement.

RCW 29.79.040 (emphasis added).

 ██ Use of the term "shall" by the Legislature indicates that the Attorney General must prepare a ballot title and summary regardless of the content of the initiative. The statutory term "shall" is presumptively imperative unless a contrary legislative intent is apparent. *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting *Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993)). No contrary legislative intent has been cited by the Attorney General. Furthermore, this presumption is strengthened where, as here, other sections of the same statute contain the word "may." *Krall*, 125 Wn.2d at 148; *compare* RCW 29.79.040 (Attorney General "shall" prepare title) *with* RCW 29.79.150 (Secretary of State "may" refuse to file initiative petition if not in proper form). There is simply no indication that the Legislature intended the Attorney General to review the petition for its substance.

Our determination that the Attorney General lacks discretion in preparing a ballot title and summary is consistent with prior Washington cases. In *Ballasiotes v. Gardner*, 97 Wn.2d 191, 195, 642 P.2d 397 (1982), we held that a county prosecutor overstepped the bounds of his authority by refusing to prepare a ballot title for a refer-

endum because he believed the subject matter to be exempt from the county charter authorizing referendums. As here, the authorizing statute used the term "shall" in describing the prosecutor's duties to prepare a ballot title. *Id.* at 195. *See also State ex rel. O'Connell v. Kramer,* 73 Wn.2d 85, 88-89, 436 P.2d 786 (1968) (holding that Secretary of State could not refuse to transmit initiative to Attorney General); *Save Our State Park v. Hordyk,* 71 Wn. App. 84, 91, 856 P.2d 734 (1993) (holding that county auditor had no authority to refuse to put an initiative on the ballot).

██ Moreover, the Attorney General's argument that if an initiative exceeds the scope of initiative power, it is not an initiative at all and that the Attorney General therefore has neither the duty nor the authority to prepare the ballot title and summary begs the question of whether the Attorney General or the courts should be determining the validity of the proposed measure. It is true that a *court* may review the substance of a proposed initiative to determine whether it exceeds the scope of initiative power described in Article II, Section 1, of the Washington State Constitution.[1] *See, e.g., Seattle Bldg. & Constr. Trades Council v. City of Seattle,* 94 Wn.2d 740, 746, 620 P.2d 82 (1980); *Ford v. Logan,* 79 Wn.2d 147, 152, 483 P.2d 1247 (1971). However, the construction of the meaning and scope of a constitutional provision is exclusively a judicial function. *State ex rel. Munro v. Todd,* 69 Wn.2d 209, 213, 417 P.2d 955 (1966) (interpreting article IV, section 1, of the state constitution), *amended on other grounds by* 426 P.2d 978 (1967); *Washington State Highway Comm'n v. Pacific Northwest Bell Tel. Co.,* 59 Wn.2d 216, 222, 367 P.2d 605 (1961) (interpreting article IV, section 1, of the state constitution). Accordingly, we hold that courts, not the Attorney General, should determine whether a proposed initiative exceeds the power reserved to the

---

[1]Article II, Section 1, of the Washington State Constitution establishes the initiative and referendum processes whereby the people may enact or reject laws independently of the Legislature.

people in article II, section 1, of the state constitution. *See also Fischnaller v. Thurston County*, 21 Wn. App. 280, 285, 584 P.2d 483 (1978) (holding that county auditor could reject declaration of candidacy only if not required to interpret constitutional or statutory language), *review denied*, 91 Wn.2d 1013 (1979).

Finally, we note that this result accords with the majority of our sister states addressing this issue. *See Schmitz v. Younger*, 21 Cal. 3d 90, 577 P.2d 652, 653, 145 Cal. Rptr. 517 (1978) (describing preparation of ballot title by attorney general as purely ministerial); *deBottari v. Norco City Council*, 171 Cal. App. 3d 1204, 217 Cal. Rptr. 790, 792 (1985) (holding that city council had mandatory duty to place referendum on ballot and citing other California cases holding that city registrar, county clerk, county board of supervisors, and the secretary of state similarly had mandatory duties), *review denied*, December 19, 1985; *Wyman v. Secretary of State*, 625 A.2d 307, 311 (Me. 1993) (holding that secretary of state had no discretion to determine potential invalidity of initiative); *Williams v. Parrack*, 83 Ariz. 227, 319 P.2d 989, 991 (1957) (holding that city council had ministerial duty to place initiative on ballot); *Fried v. Augspurger*, 164 N.E.2d 466, 468 (Ohio Com. Pl. 1959) (stating that board of county commissioners had mandatory duty to place referendum on ballot once sufficient, valid signatures obtained); *but see Paisner v. Attorney General*, 390 Mass. 593, 458 N.E.2d 734, 737-38 (1983) (holding that attorney general has discretion to determine whether initiative would enact "law" before certifying petition); *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18, 21 (1984) (stating that secretary of state cannot pass on validity of initiative unless the subject of the initiative is invalid or unconstitutional on its face).

■ This does not leave the Attorney General without recourse to prevent an initiative from reaching the ballot. If the Attorney General believes an initiative exceeds the scope of the initiative power, she should prepare the bal-

lot title and summary in accordance with her statutory duty and then seek an injunction to prevent the measure from being placed on the ballot. *See Save Stanislaus Area Farm Economy v. Board of Supervisors*, 13 Cal. App. 4th 141, 16 Cal. Rptr. 2d 408, 412-13 (1993) (holding that public official must comply with ministerial duties even if initiative invalid; official could then bring court action to enjoin the initiative); *cf. Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971) (affirming court order to enjoin initiative from being placed on the ballot).

■ Because the parties have fully briefed and argued the substantive issues in detail, and the validity of the initiative itself was the ground for the denial by the superior court of the petition by Philadelphia II, we proceed to the substantive question of whether the Philadelphia II initiative did in fact exceed the scope of the initiative power. Additionally, there is every reason to believe that the Attorney General would seek an injunction if we were to remand the case. Therefore, judicial economy compels us to address this issue here. *See also deBottari v. Norco City Council*, 171 Cal. App. 3d 1204, 217 Cal. Rptr. 790 (1985) (reaching merits of pre-election judicial review despite holding that city council had breached mandatory duty to submit initiative to vote), *review denied*, December 19, 1985.

■ The initiative power was created in 1911 by constitutional amendment. The amendment provided that "[t]he legislative authority of the state of Washington shall be vested in the legislature . . . but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature . . . ." Wash. Const. art. II, § 1. Generally, courts are reluctant to rule on the validity of an initiative before its adoption by the people. This reluctance stems from our desire not to interfere in the electoral process or give advisory opinions. *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 746, 620 P.2d 82 (1980).

However, an established exception to this rule in Washington is that a court will review a proposed initiative to determine if it is beyond the scope of the initiative power. *Id.* at 746 (citing, inter alia, *Leonard v. City of Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973); *Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971)). The reasoning behind the exception was stated as follows:

> A fundamental limit on the initiative power inheres in its nature as a legislative function reserved to the people. . . . It is clear from the constitutional provision that the initiative process, as a means by which the people can exercise directly the legislative authority to enact bills and laws, is limited in scope to subject matter which is legislative in nature.

*Ford v. Logan*, 79 Wn.2d 147, 154-55, 483 P.2d 1247 (1971).[2]

The idea that courts can review proposed initiatives to determine whether they are authorized by article II, section 1, of the state constitution is nearly as old as the amendment itself. *See State ex rel. Berry v. Superior Court*, 92 Wash. 16, 159 P. 92 (1916) (enjoining printing and distribution of proposed initiative measure due to preamble being improper argument and not legislative in character). Recognizing the importance of the initiative power, however, this court has allowed for pre-election review only in rare circumstances, consistently making the distinction that while a court may decide whether the initiative is authorized by article II, section 1, of the state constitution, it may not rule on the constitutional validity of a proposed initiative. *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 745-46. We adhere to that distinction and review the Philadelphia II initiative only to determine

---

[2]Petitioners correctly note that the *Ford v. Logan* lead opinion, from which this language is taken, was signed by only three justices, with two justices concurring in the result only. However, the principle that courts may review initiatives to determine if they are legislative in character has been restated in numerous opinions. *See, e.g., Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 620 P.2d 82 (1980); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973).

whether it is authorized by article II, section 1, of the state constitution.

Petitioners urge us to overrule *Ford v. Logan* and subsequent case law to hold that *no* pre-election review is proper, provided that procedural requirements have been met and there is no indication of fraud.[3] However, the rationale of the *Ford* court in distinguishing review of the constitutional validity of a proposed measure and whether the measure is authorized by our state constitution is sound and finds support among commentators and other jurisdictions. *See* James D. Gordon III & David B. Magleby, *Pre-Election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 313, 320 (1989) (recommending distinction and stating that most courts allow pre-election review of procedural and subject matter limitations). The distinction recognized by *Ford* allows a sensible balance between allowing a court to prevent public expense on measures that are not authorized by the constitution while still protecting the initiative power from review of an initiative's provisions for possible constitutional infirmities. We thus decline to overrule *Ford* and consistent cases.

 As we have discussed, the initiative process is limited to acts that are legislative in nature. *Ford*, 79 Wn.2d at 154. For example, in *Ford*, we held that an attempt to repeal the King County charter by initiative was beyond the scope of permissible authority as it was more in the nature of a constitutional amendment than the mere legislative act authorized in the state constitution. *Id.* at 156-57. We have affirmed *Ford*'s reasoning numerous times in distinguishing initiatives proposing legislative acts from those proposing administrative acts, enjoining the latter. *See, e.g., Heider v. City of Seattle*, 100 Wn.2d

---

[3]Petitioners also argue that article I, section 1, of our state constitution, which declares that "[a]ll political power is inherent in the people" confers initiative powers on state citizens. Petitioners cite no authority for their claim that this section provides an independent basis for an exercise of initiative power. Moreover, the general language "all political power is inherent in the people" does not provide us with any guidance on this issue.

874, 675 P.2d 597 (1984); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973).

Not only must the proposed initiative be legislative in nature, but it must be within the authority of the jurisdiction passing the measure. *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 747. In that case, we affirmed an injunction preventing a vote on a citywide initiative because it conflicted with state law. *Id.* at 745, 748. We reasoned that the initiative attempted to achieve something that was not within its power and was thus invalid. *Id.* at 748.

Therefore, in order to be a valid initiative, Philadelphia II must be legislative in nature and enact a law that is within the state's power to enact. With these restrictions in mind, we examine the Philadelphia II initiative and conclude that it goes beyond the scope of Washington State initiative power as it attempts to exercise authority that goes beyond the jurisdiction of the state.

The fundamental and overriding purpose of Philadelphia II is to create a federal initiative process. Although state procedures for initiatives are affected by Philadelphia II, these changes are incidental to the primary goal of the initiative. The entire initiative is suffused with a purpose that is national or global in scope. For example, the section creating the electoral agency responsible for presiding over state and national initiatives declares its purpose as "to permit the full expression of sovereignty of citizens in every political jurisdiction in the United States . . . ." Initiative 641, § 4, Clerk's Papers at 13. Furthermore, a substantial portion of the initiative is devoted to procedures for calling a "world meeting" when an appropriate number of citizens worldwide express their willingness via initiatives to participate in such an event. Significantly, if the initiative does not eventually become enacted as federal law, it is deleted from the state codes. If the initiative does become federal law, it is also deleted from state codes. Thus, the proposed change in state law is merely an ephemeral stepping stone to a national initiative process and has no independent state purpose.

720

While the goals of the Philadelphia II initiative may be laudable, it is simply not within Washington's power to enact federal law. Our initiative process establishes a method independent from the Legislature for enacting state laws and cannot be used to enact laws beyond the jurisdiction of the state. Consequently, the Philadelphia II initiative does not fall within the provisions in our state constitution for initiatives.

In conclusion, the Attorney General should have prepared the ballot title and summary and then sought to enjoin its placement on the ballot. Nevertheless, because we determine that the initiative is beyond the scope of Washington's initiative power, we decline to direct the Attorney General to do so in this case. The judgment of the superior court is affirmed.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.