**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 6, 2025

*Stephens, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 6, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| TIM EYMAN, <br><br>      Petitioner, <br><br> v. <br><br> STEVE HOBBS et al., <br><br>      Respondents. | No. 104117-9 <br><br> EN BANC <br><br><br> Filed: <u>November 6, 2025</u> |

STEPHENS, C.J.—Petitioner Tim Eyman filed an original action in this court, seeking a writ of mandamus ordering Secretary of State Steve Hobbs (Secretary) to process his proposed referendum on Engrossed Substitute House Bill (ESHB) 1296, § 501 (section 501), passed by the legislature on April 25, 2025. *See* LAWS OF 2025, ch. 369. The Secretary refused to file the referendum on the basis that section 501 is subject to the emergency clause in ESHB 1296, § 603 (section 603) and is therefore beyond the scope of the referendum power. Eyman argues that the Secretary's inaction violated his constitutional right to file a referendum. He contends that the plain language of the elections act, and this court's precedent, require the Secretary to accept his properly filed referendum, assign it a serial

number, and transmit it to the attorney general for preparation of a ballot title and summary.

We hold that the Secretary has no mandatory duty to process a purported referendum on legislation that is, on its face, constitutionally exempt from referendum. Further, the legislature's declaration of an emergency in section 603 is valid, and as a result, section 501 is not subject to referendum. The petition for a writ of mandamus is denied.

BACKGROUND

On April 28, 2025, Eyman submitted a proposed referendum to the Secretary, seeking to refer section 501 to a vote of the people at the next election. The Secretary declined to process the proposed referendum, explaining by letter that the measure is not within the scope of the referendum power. The Secretary noted that under the Washington State Constitution, a person may file a referendum on any act passed by the legislature except those "necessary for the immediate preservation of public peace, health, or safety, or for the support of the state government and its existing public institutions." Pet. for Writ of Mandamus, Ex. C; *see* WASH. CONST. art. II, § 1(b). The Secretary explained that because the legislature included an emergency

clause[1] in the bill, he had no discretion as a ministerial filing officer to refuse to give effect to that determination.

Eyman filed a petition for a writ of mandamus and a request for oral argument in this court, seeking an order requiring the Secretary to process the referendum and to declare the emergency clause, section 603, invalid. In light of the short, 90-day timeline to collect signatures for the referendum petition, he also moved for expedited review. Our commissioner granted expedited review and set Eyman's petition for consideration on his June 4, 2025 calendar. We subsequently granted Eyman's motion to consider the petition at our en banc conference on June 4, 2025. After review of the merits, we issued an order on June 13, 2025 denying Eyman's petition, with opinion to follow. We now explain our decision.

## ANALYSIS

Under article IV, section 4 of the Washington State Constitution, we have nonexclusive and discretionary original jurisdiction to issue a writ of mandamus against a state officer.[2] A writ of mandamus is "a rare and extraordinary remedy

---

[1] We use the phrase "emergency clause" as a shorthand reference to the exception to the referendum power set out in Wash. Const. art. II, § 1(b), consistent with the parties' general usage.
[2] Justice González's concurring opinion suggests that to the extent the Secretary is prohibited from taking a particular action, this would involve a "writ of prohibition" over which we have only appellate and revisory jurisdiction, WASH. CONST. art. IV, § 4. Concurrence in result at 4 (González, J.). However, our precedent makes clear that prohibiting a state officer from conducting an action is within the scope of a writ of mandamus. *Freeman v. Gregoire*, 171 Wn.2d 316, 323, 256 P.3d 264 (2011) ("[W]e can issue a writ to prohibit a state officer from exercising a mandatory duty."); *Wash. State Labor Council v. Reed*, 149 Wn.2d 48, 55-56, 65 P.3d 1203 (2003) ("Mandamus is an appropriate remedy where a petitioner seeks to prohibit a

because it allows courts to command another branch of government to take a specific action, something the separation of powers typically forbids." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020). To secure a writ, the petitioner bears a "'demanding burden'" of proving three elements: (1) they have no plain, speedy, and adequate remedy in the ordinary course of law, (2) they are beneficially interested, and (3) the party subject to the writ is under a clear duty to act. *Id.* at 894 (internal quotation marks omitted) (quoting *Eugster v. City of Spokane*, 118 Wn. App. 383, 403, 76 P.3d 741 (2003)); *see* RCW 7.16.170, .160. A failure to meet any one of these elements is dispositive, and even if all are satisfied, this court has discretion to decline to issue a writ. *Am. Prop. Cas. Ins. Ass'n v. Kreidler*, 200 Wn.2d 654, 659, 520 P.3d 979 (2022).

This case turns on whether the Secretary has a clear duty to act. To understand what is required of the Secretary, we provide a brief overview of the referendum power as defined by our constitution and the statutory processes to effectuate that power.

The Washington State Constitution grants voters the right to approve or reject laws enacted by the legislature. WASH. CONST. art. II, § 1(b). This direct legislative power, known as the referendum power, serves as a powerful check on the

---

mandatory duty."). Further, a "prohibit[ion] from accepting a referendum petition" can be construed as a mandate to decline a referendum petition. Concurrence in result at 4 (González, J.).

4

legislature. However, this power is not without limits. Article II, section 1(b) contains an "emergency exception," which limits the public's right to referendum for "such laws as may be necessary for the immediate preservation of the public peace, health or safety, [or][3] support of the state government and its existing public institutions." WASH. CONST. We interpret this provision to include two separate and distinct exceptions (although we often refer to an invocation of either exception as an "emergency clause"): (1) "the public safety exception"—legislation promulgated as part of a legislative declaration of emergency and (2) "the support exception"— legislation promulgated in support of state government and its existing public institutions. *Wash. State Farm Bureau Fed'n v. Reed*, 154 Wn.2d 668, 673, 115 P.3d 301 (2005). When a bill contains an emergency clause, it takes effect immediately and is exempt from the referendum process. *Id.*

The procedures to obtain a referendum are set forth in the elections act, chapter 29A.72 RCW. To place a referendum on the ballot, a Washington voter must submit a signed affidavit of sponsorship, a clear copy of the subject legislation, and a filing fee to the secretary of state. RCW 29A.72.010. Upon receipt, the "secretary of state shall give a serial number" to each referendum measure "and forthwith transmit one copy of the measure proposed bearing its serial number to the

---

[3] We interpret this constitutional provision to include "or." *Wash. State Lab. Council*, 149 Wn.2d at 57 n.5.

5

attorney general." RCW 29A.72.040. Within five days, "the attorney general shall formulate" the referendum ballot title and summary and transmit that information back to the secretary. RCW 29A.72.060. The secretary "shall" then notify the sponsor of the exact language of the ballot title and summary, enabling the sponsor to prepare referendum petitions for collecting signatures. RCW 29A.72.070, .050, .130. Lastly, a sponsor "shall" submit completed signature petitions in the correct form to the secretary no later than 90 days after adjournment of the legislative session for the referendum to be placed on the ballot at the next general election. WASH. CONST. art. II, § 1(d).

Eyman argues that the Secretary failed to perform a mandatory duty at the second step of the referendum process, RCW 29A.72.040, by refusing to transmit his referendum measure to the attorney general for preparation of a ballot title and summary. Specifically, he asserts that the Secretary has no discretion to refuse a properly filed referendum on the grounds that the legislation contains an emergency clause because the validity of an emergency clause presents a judicial question that the Secretary is not entitled to make. The Secretary responds that as an executive branch officer, respect for separation of powers precludes him from processing such a referendum because he lacks authority to override the legislature's declaration of emergency.

Our analysis of the parties' arguments appropriately begins with the language of our constitution. A referendum "may be ordered on any act, bill, law, or any part thereof passed by the legislature, *except* such laws as may be necessary for the immediate preservation of the public peace, health or safety . . . ." WASH. CONST. art. II, § 1(b) (emphasis added). Legislation that contains this language—meaning the legislature has determined the enacted law is necessary for the immediate preservation of the public peace, health, or safety—plainly falls outside the referendum power. This is not a procedural but a *substantive* limit on the right to referendum. We interpret statutes implementing the referendum power in accordance with the mandates of our constitution. Under article II, section 1(b), "legislation enacted pursuant to the emergency clause is exempt from the referendum process." *Wash. State Farm Bureau Fed'n*, 154 Wn.2d at 673.

Eyman argues that this case is controlled by *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389 (1996), where we held that the attorney general has no discretion to refuse to prepare a ballot title and summary on a proposed initiative on the ground that the measure exceeds the scope of the initiative power. *Id*. at 712-13. Eyman reasons that just as the attorney general has a mandatory duty to process a properly filed initiative, so too does the Secretary have a mandatory duty to process a properly filed referendum.

7

We agree with Eyman that the holding in *Philadelphia II* guides our decision here—but not in the way he suggests. In *Philadelphia II*, after the Secretary properly transmitted a proposed initiative to the attorney general for preparation of a ballot title and summary, the attorney general examined the contents of the initiative and determined it to be beyond the scope of the initiative power. We held that the attorney general has no authority to make such a determination. Interpreting the meaning and scope of a constitutional provision is exclusively a judicial function and only courts "should determine whether a proposed initiative exceeds the power reserved to the people in article II, section 1, of the state constitution." *Id*. at 714-15.

The parallels between *Philadelphia II* and this case focus on the legislative measure being challenged. In *Philadelphia II*, the court was concerned with the substance of an initiative proposed directly by the people under article II, section 1(a). Here, we are concerned not with the substance of the proposed referendum but rather with the substance of the legislation the referendum seeks to reject. The legislature has determined that section 501 "is necessary for the immediate preservation of the public peace, health, or safety . . . and takes effect immediately." ESHB 1296, § 603. Pursuant to article II, section 1(b), laws that are "necessary for the immediate preservation of the public peace, health or safety" are exempt from referendum. Interpreting the meaning and scope of a legislative act and a

constitutional provision are solely judicial questions. *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 777, 380 P.2d 735 (1963). The Secretary, as an executive branch officer, has no clear duty to determine the validity of the legislative enactment. Indeed, declaring otherwise would implicate a separation of powers concern because an executive officer would be tasked with exercising a judicial function.[4]

We therefore reject Eyman's primary argument that the Secretary has a mandatory duty to process a referendum regardless of an emergency clause and hold that no writ of mandamus may issue absent a judicial determination that the emergency clause enacted by the legislature is invalid.

The validity of the emergency clause in section 603 can still be challenged. Just as the court reviews the validity of an initiative measure when challenged as exceeding the scope of legislative authority, so, too, the court reviews a legislative declaration of emergency as a judicial question. *Humiston*, 61 Wn.2d at 777; *see also State ex rel. McLeod v. Reeves*, 22 Wn.2d 672, 674, 157 P.2d 718 (1945) (explaining that whether an emergency exists is "in the ultimate, a judicial

---

[4] Similar separation of power concerns could be implicated by the suggestion in the concurring opinion that the secretary "has discretion to decide whether to accept the referendum petition." Concurrence in result at 6 (González, J.). While the secretary may make the initial decision regarding whether to process a referendum petition, a court must ultimately decide whether the secretary's action is subject to a writ of mandamus, including whether the legislative declaration of emergency is valid. As an executive officer, the secretary has no discretion to decide the validity of a legislatively enacted emergency clause; that is solely a judicial question.

9

question"). Indeed, we have done so numerous times over the past 100 years, finding the legislature's invocation of an emergency invalid in at least seven cases. Bryan L. Page, *State of Emergency: Washington's Use of Emergency Clauses and the People's Right to Referendum*, 44 GONZ. L. REV. 219, 251-52 (2008); *see, e.g.*, *State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 P. 11 (1915) (changing the composition of the Board of State Land Commissioners), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019); *State ex rel. Satterthwaite v. Hinkle*, 152 Wash. 221, 277 P. 837 (1929) (abolishing the state highway committee and creating a department of highways); *State ex rel. Burt v. Hutchinson*, 173 Wash. 72, 21 P.2d 514 (1933) (authorizing horse racing and betting); *State ex rel. Robinson v. Reeves*, 17 Wn.2d 210, 135 P.2d 75 (1943) (creating a program for acquiring electrical utility properties), *overruled by State ex rel. Hoppe v. Meyers*, 58 Wn.2d 320, 363 P.2d 121 (1961); *State ex rel. Kennedy v. Reeves*, 22 Wn.2d 677, 157 P.2d 721 (1945) (unifying control and jurisdiction over state timber); *McLeod*, 22 Wn.2d 672 (appointing a state game commission); *Humiston*, 61 Wn.2d 772 (authorizing certain gambling activities). When a court declares an emergency clause to be invalid, the subject legislation may be challenged by referendum.

As the issue has been raised and sufficiently briefed, "judicial economy compels us" to consider the validity of section 603. *Philadelphia II*, 128 Wn.2d at 716; *see also Wash. State Lab. Council v. Reed*, 149 Wn.2d 48, 55, 65 P.3d 1203

(2003) (deciding the constitutionality of a referendum in the interests of "judicial economy" instead of requiring a party to seek an injunction at the superior court level). Eyman challenges section 603 on the ground that the legislature "did not include an intent section, contained no findings, and provided no explanation for why it was 'necessary for the immediate preservation of the public peace, health, or safety' or why it had to take effect immediately."[5] He contends that the controlling principle behind the emergency clause exception is that it addresses "something unforeseen" and that this bill fails to meet that heightened showing. *Id.* at 28 (quoting *State ex rel. Porter v. Superior Ct.*, 145 Wash. 551, 559, 261 P.90 (1927)). The State argues that both the substance of the newly added provisions and facts in the legislative record support the legislature's inclusion of the emergency clause. It emphasizes that the burden is on the challenger to show that the emergency clause is invalid, a burden that Eyman fails to meet.

Our standard of review for a legislative declaration of emergency is well established. We grant "considerable deference to the Legislature's determination that an emergency exists, giving it every favorable presumption and deferring to its judgment unless it is *obvious* that the declaration of emergency is false." *CLEAN v. State*, 130 Wn.2d 782, 812, 928 P.2d 1054 (1996) (emphasis added). We make no

---

[5] Pet'r's Resp. to Resp't's Reply & Pet'r's Br. in Supp. of Emergency Mot. for Expedited Consideration of Pet. for Writ of Mandamus at 5.

inquiry as to the facts but consider the legislature's act on its face, aided only by the court's judicial knowledge. *Farm Bureau*, 154 Wn.2d at 675. In exercising our judicial knowledge,[6] we look to facts in the record, including those facts "'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty.'" *CLEAN*, 130 Wn.2d at 809 (quoting *Humiston*, 61 Wn.2d at 779). If there is any doubt about the validity of the emergency clause, we give the legislature "every favorable presumption." *Id.* at 812.

We first considered the validity of an emergency clause in *Brislawn*, 84 Wash. 302. In that case, the legislature enacted a bill changing the composition of the Board of State Land Commissioners and included an emergency clause to make the bill immediately effective. The governor vetoed the emergency clause, but state legislators passed the bill over the governor's veto and a new board was organized. Board members whose positions were threatened challenged the emergency clause's validity in an original action in this court. We agreed with the petitioners and held the emergency clause invalid, finding that the bill did not touch on the "immediate preservation of the public peace, health, or safety." *Id.* at 322-23. In making this

---

[6] We use the term "judicial knowledge" broadly to encompass judicial notice. We have used the terms interchangeably, stating that the court "must consider . . . the face of the act, aided by its judicial knowledge" and that the court "'must confine itself to . . . the face of the law, and those facts of which it can take judicial notice.'" *State ex rel. Hamilton v. Martin*, 173 Wash. 249, 257-58, 23 P.2d 1 (1933) (quoting *State ex rel. Govan v. Clausen*, 108 Wash. 133, 141-42, 183 P.3d 115 (1919)); *see also* BLACK'S LAW DICTIONARY 1010 (12th ed. 2024) ("judicial knowledge" directing users to definition of "judicial notice").

determination, we construed the emergency exception narrowly, explaining that the power of the legislature to exempt an act from referendum is not "unlimited" and does not extend to acts concerning the "general welfare or to the service of economy or convenience." *Id.* at 319-20. Reviewing the bill, we observed that substituting one officer for another on a board could not reasonably be viewed as "'necessary for the immediate preservation of the public peace, health or safety' of the state." *Id.* at 306 (quoting WASH. CONST. art. II, § 1(b)). We reasoned that the functions of the state land commission would not be interrupted by a short-term vacancy in its membership and "that it can make no real difference whether this law goes into effect at the present time or ninety days after the close of the session." *Id.* at 322.

More recent cases confirm the validity of a legislative emergency clause where the purpose of the act would be thwarted if the legislation was not enacted immediately. In *CLEAN*, we considered whether an emergency clause included in the "Stadium Act," which concerned the financing of a new stadium for the Seattle Mariners, violated the people's constitutionally protected right to referendum. 130 Wn.2d 782. We acknowledged that the act did not "articulate with any specificity why an emergency was deemed to be present." *Id.* at 809. However, we observed several judicially noticeable facts in the record that demonstrated why quick action was justified, including (1) the legislature called a special session rather than waiting for the general session, (2) legislators in floor debates emphasized the need for

urgency, and (3) the act had to take effect immediately to prevent the Mariners from being put up for sale, "thereby defeating the purpose of the legislation." *Id.* We explained that there was nothing to "suggest[] that the Legislature acted improperly" and upheld the legislature's declaration. *Id.* at 813.

We considered another challenge to an emergency clause in *Farm Bureau*, 154 Wn.2d 668. There, the petitioners sought a referendum on legislation that suspended the legislative requirement that all measures raising taxes be approved by a two-thirds majority. As in *CLEAN*, we concluded that the emergency clause attached to the legislation was valid, finding that the immediate effective date of the bill facilitated the support of state government by enabling it to pass numerous revenue generating bills for services such as education, health services, the justice system, and water quality programs. *Id.* at 677-78. We emphasized that the petitioner presented no evidence that the legislature "feigned the necessity of enacting the emergency clause in order to prohibit referendum." *Id.* at 677. Finding the facts in the record were not "obviously false and a mere ruse to deprive voters of the referendum power," we affirmed the emergency clause's validity. *Id.*

Applying this deferential standard of review, we find the legislative declaration of emergency in section 603 to be valid. Contrary to Eyman's argument, we do not construe "emergency" so narrowly as to refer only to what is "unforeseen" but, rather, to encompass legislation intended to immediately mitigate and address

14

significant and ongoing harm. In amending former RCW 28A.605.005 (2024), ESHB 1296 added multiple new sections meant to address the ongoing risks of harm to school children.

The bill requires school districts' policies and procedures to "prioritize the protection of every student's safety" and to ensure an "academic environment free of discrimination." LAWS OF 2025, ch. 369, § 101. It enacted a "statement of student rights" and required public schools to develop materials incorporating and promoting it. *Id*. § 202. These rights include "[t]he right to learn in a safe, supportive learning environment, free from harassment, intimidation, or bullying," and "[t]he right to access an academic environment free of discrimination." *Id*. § 202(2)(b)(ii)-(iii). The bill also included provisions governing parents' rights, providing, for example, that parents have the right to receive "immediate notification if there has been a shooting on school property" and to receive "immediate notification upon receipt of a report that their child is alleged to be the victim, target, or recipient of physical or sexual abuse, sexual misconduct, or assault by a school employee or school contractor." *Id*. § 501(2)(c), (d). Parents are entitled "[t]o have their child receive a public education in a setting in which discrimination on the basis of [a number of protected characteristics] is prohibited." *Id*. § 501(2)(g).

There is no dispute that these provisions, which are intended to promote student safety, learning, and privacy, are of significant concern to the legislature and

15

clearly within its police power to enact. But that alone is not enough. To suspend the people's referendum power, legislation must also be a matter requiring immediate action, not merely one of "expediency, convenience or best interest." *Brislawn*, 84 Wash. at 318. A matter is urgent if it requires prompt action to prevent or mitigate the ongoing risk of harm. Promoting student safety and learning goes beyond simply serving children's best interests, it invokes the paramount constitutional duty of our state—to amply provide for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex. WASH. CONST. art. IX, § 1. ESHB 1296 is intended to promote a "safe and supportive public education system" and provide students with the "right to learn in a safe, supportive learning environment, free from harassment, intimidation, or bullying." LAWS OF 2025, ch. 369 pmbl., § 202(2)(b)(ii).

In addition, the legislative record supports this purpose to help prevent serious, ongoing harm to children. Summaries of public testimony provided to state legislators stated that the bill "is student-centered and starts with what students need to feel welcome and belong at school and to make sure their basic needs are met, so they can learn and thrive."[7] Public commentary also focused on the harm caused by aspects of the law subject to amendment and that the bill sought to remedy, including

---

[7] S.B. REP. ON ESHB 1296, at 12, 69th Leg., Reg. Sess. (Wash. 2025), https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bill%20Reports/Senate/1296-S.E%20SBR%20APS%2025.pdf?q=2025051610082.

that it "spread disinformation, stoked fear among parents, and caused division between schools and families." *Id.* Accordingly, we conclude that the emergency clause is not "obviously false" or intended to prevent an exercise of the referendum power. *Farm Bureau*, 154 Wn.2d at 677.

As in *CLEAN*, the choice of whether to include an emergency clause was carefully considered and extensively debated. The original version of the bill filed on January 14, 2025 included an emergency clause, as has every version since.[8] This was not a legislative oversight. The legislature rejected multiple proposed amendments to strike it after legislators debated on the floor of the house whether it was needed.[9] One legislator expressed, "The suicide rates, the depression, and the self-harm that some of our students are experiencing just because they do not feel that they belong is a problem, and yes . . . is an emergency. I ask you to vote yes to provide a safe and supportive public education system."[10]

---

[8] H.B. 1296, 69th Leg., Reg. Sess. (Wash. Jan. 14, 2025), https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/House%20Bills/1296.pdf?q=20250516100828.

[9] Amend. 1296-S AMH CONN MOET 390 to SUBSTITUTE H.B. 1296, 69th Leg., Reg. Sess. (2025), https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Amendments/House/1296-S%20AMH%20CONN%20MOET%20390.pdf; Amend. 1296-S AMH ENGE MORI 154 to SUBSTITUTE H.B. 1269, 69th Leg., Reg. Sess. (Wash. 2025), https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Amendments/House/1296-S%20AMH%20ENGE%20MORI%20154.pdf

[10] Hr'g on S.H.B. 1296, 69th Leg. Reg. Sess. (Wash. March 12, 2025), at 5 hr., 49 min., 44 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/house-floor-debate-march-12-2025031220/.

17

When considering the validity of an emergency clause, we are required to grant considerable deference to the legislature's determination. We make no factual inquiry and look only to what appears on the face of the act, aided by the court's judicial knowledge. There is no indication here that the legislature's declaration in section 603 "feigned the necessity," *Farm Bureau*, 154 Wn.2d at 677, or was a "'palpable attempt at dissimulation,'" *CLEAN*, 130 Wn.2d at 808 (internal quotation marks omitted) (quoting *City of Tacoma v. Luvene,* 118 Wn.2d 826, 851, 827 P.2d 1374 (1992)).

## CONCLUSION

We conclude that the Secretary had no mandatory duty to process the proposed referendum on ESHB 1296, § 501 in light of the valid emergency clause in ESHB 1296, § 603. The petition for a writ of mandamus is denied.

Stephens, C.J.

WE CONCUR:

Madsen, J.

Yu, J.

Whitener, J.

*Eyman v. Hobbs*

No. 104117-9

JOHNSON, J. (concurring)—In *Colvin v. Inslee*, this court explained that a court will issue a writ of mandamus only under extraordinary circumstances and where the law already prescribes a clear duty. 195 Wn.2d 879, 467 P.3d 953 (2020). Petitioners seeking a writ of mandamus must show that they have no "'plain, speedy and adequate remedy in the ordinary course of law.'" *Colvin*, 195 Wn.2d at 894 (quoting RCW 7.16.170). Here, as the State correctly observes, this action could have been brought in the superior court, either under the Washington Administrative Procedure Act, ch. 34.05 RCW, or the Uniform Declaratory Judgments Act, ch. 7.24 RCW, either of which would allow the superior court to provide full relief. On this basis, the petition was properly denied.

_____
Johnson, J.

No. 104117-9

GONZÁLEZ, J. (concurring in result) — I concur with the lead opinion that the petitioner has not established he is entitled to mandamus. Mandamus is an extraordinary writ and is available only when the respondent has a clear and mandatory duty to act and has failed to do so as required. *Brown v. Owen*, 165 Wn.2d 706, 724-25, 206 P.3d 310 (2009). In this case, given that the legislature has determined that Engrossed Substitute House Bill (ESHB) 1296 is an emergency, and given that the legislature's determination is clear and not a palpable attempt at dissimulation, the secretary of state does not have a clear and mandatory duty to accept this petition for a referendum under article II, section 1(b) of our state constitution. *See Wash. State Farm Bureau Fed'n v. Reed*, 154 Wn.2d 668, 676, 115 P.3d 301 (2005).

I write separately, however, because I fear the lead opinion has gone too far in its earnest attempt to explain why the court is right. In effect, the lead opinion concludes the secretary of state did have a duty to act but in the opposite way the

*Eyman v. Hobbs,* No. 104117-9 (González, J., concurring in result)

petitioner desires. I am concerned that by going beyond what is necessary to explain our decision, we create problems we cannot foresee.

Our constitutional order is a tapestry of checks and balances. *See Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 503, 198 P.3d 1021 (2009) (quoting *State v. Evans*, 154 Wn.2d 438, 445, 114 P.3d 627 (2005)). The people's power to effectively veto legislature is part of that tapestry. But because we learned from a small group of people's use of the referendum power to repeatedly thwart establishing the University of Oregon despite the will of the majority of the voters to do so, that power is constitutionally limited. *See* Jeffrey T. Even, *Direct Democracy in Washington: A Discourse on the Peoples' Powers of Initiative and Referendum*, 32 GONZ. L. REV. 247, 281-82 (1996/97). Because we learned from that history, duly enacted statutes are not subject to referendum if they are necessary for the immediate preservation of the public peace, health, or safety, or if they are necessary for the support of the state government and its existing public institutions. *Id.*; WASH. CONST. art. II, § 1(b).

When the legislature has made that judgment clear, we defer to that judgment unless it is obviously incorrect. *CLEAN v. State*, 130 Wn.2d 782, 812, 928 P.2d 782 (1996). While I share the concerns some of my colleagues have expressed over the years that this standard is too lenient, the petitioner has not shown that our prior cases are incorrect and harmful. *See Reed*, 154 Wn.2d at 682

2

*Eyman v. Hobbs,* No. 104117-9 (González, J., concurring in result)

(Chambers, J., dissenting); *cf. Walker v. Munro*, 124 Wn.2d 402, 426, 879 P.2d 920 (1994) (Utter, J., dissenting) (expressing similar concerns in the initiative context). Thus, they remain good law that binds us.

Even though I am discontented with our current standard, I understand why prior courts adopted it. This court often has to make hard choices. Scarcely three years after our constitution was amended to create the referendum power, this court was called on to determine whether the legislature had properly exercised its power to shield a statute from the people's veto. *See State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 P. 11 (1915), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). In that first case, this court rejected the attorney general's argument that the legislature's exercise of power was simply not subject to judicial review. *Id.* at 305, 320. The court essentially concluded that such deference to the legislative judgment would undermine the people's own constitutional power. *Id.* at 320. This, too, is part of our checks and balances.

But the legislature has the inherent constitutional plenary power to legislate, and the courts and executive branch owe legislative judgments significant deference. This original action presents us with a simple question: Does the secretary of state have a clear, mandatory duty to accept a proposed referendum for filing when the legislature has declared the statute necessary for the immediate preservation of the public peace, health, or safety?

3

In my view, the answer to that question is simple: no. To the extent the lead opinion agrees, I concur.

The lead opinion effectively decides that the emergency declaration is correct and that the secretary has a duty not to accept the referendum petition. While the lead opinion may be right, resolving those questions is not necessary to decide whether a writ of mandamus ordering the secretary to accept the referendum petition should issue. I would not use this case to decide whether the secretary of state is *prohibited* from accepting a referendum petition on a bill with an emergency declaration in all cases. The original jurisdiction of this court does not include writs of prohibition. WASH. CONST. art. IV, § 4. We do not have a writ of prohibition before us, and we would not have original jurisdiction over such a writ were it brought here. While this court has the power to issue writs of prohibition in our appellate or revisory capacity, we do not have that authority as part of our original jurisdiction. *Id.*

I am also concerned that the lead opinion seems to suggest the secretary has no discretion to decline to file a referendum petition whenever the legislature has found a bill was an emergency or was necessary. I can imagine situations where the secretary may need to exercise judgment: the declaration might be vague, the necessity obvious but not explicitly found by the legislature; the declaration

palpably an attempt at dissimilation. I would await such a case before deciding the question.

I do not find *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389 (1996), particularly helpful. *Philadelphia II* concerned an initiative that purported to make significant changes to state and federal constitutional law and to international law. 128 Wn.2d at 710-11. The secretary of state had accepted the proposed initiative and transmitted it to the attorney general to prepare a ballot title and explanatory statement. 128 Wn.2d at 711. The attorney general declined on the grounds that the initiative was beyond the scope of the initiative power. *Id.* at 710-11. Supporters of the initiative sought a writ of mandamus in superior court to compel the attorney general to prepare the ballot title and explanatory statement, arguing that the attorney general had a mandatory duty to do so. *Id.* at 711. The superior court judge agreed with the attorney general's determination and dismissed the mandamus action. *Id.* at 711-12. Meanwhile, the deadline for putting the initiative on the ballot passed, mooting the case. *Id.*

This court agreed with the superior court that the initiative was beyond the scope of the legislative power of the state and thus not a proper subject for an initiative. *Id.* However, it concluded that the attorney general did not have the discretion to refuse to process the initiative. *Id.* at 713. The court concluded that the attorney general should have prepared the ballot title and explanatory statement

*Eyman v. Hobbs,* No. 104117-9 (González, J., concurring in result)

and, meanwhile, brought an injunctive action in court to allow the court to determine whether the initiative was beyond the scope of legislative power. *Id.* at 713-14.

This court concluded that "courts, not the Attorney General, should determine whether a proposed initiative exceeds the power reserved to the people in article II, section 1, of the state constitution." *Id.* at 714-15. Nonetheless, it affirmed on the grounds that the initiative *was* beyond the scope of the legislative authority.

It may be that the same reasoning that animated *Philadelphia II* should apply here. But it is not clear to me whether the secretary of state's role in accepting or rejecting referendum petitions is analogous to the attorney general's role in drafting ballot titles and explanatory statements. Since the secretary of state simply respected the legislature's judgment that the initiative was an emergency, the question is not well presented.

Simply put, either the legislative emergency declaration is binding or the secretary has discretion to decide whether to accept the referendum petition. The legislature may have not spoken clearly or the emergency might be obvious but not explicitly acknowledged in hastily drafted legislation. Either way, mandamus is not an available remedy because the secretary has no clear duty to accept this particular petition. Eyman should have brought his challenge to the secretary of

6

state in superior court as an action for injunctive or declaratory relief where a trial court could have reached the merits.

With these observations, I respectfully concur in result.

González, J.

Gordon McCloud, J.

Montoya-Lewis, J.

Mungia, J.